**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ronald C Russ,<br><br>    Plaintiff,<br><br>v.<br><br>United Services Automobile Association, et al.,<br><br>    Defendants. | No. CV-18-04222-PHX-SMB<br><br>**ORDER** |

    Pending before the Court is Plaintiff's Motion to Vacate Arbitration Award (Doc. 1) and Defendants' Cross-Motion to Confirm Arbitration Award (Doc. 15).[1]

**BACKGROUND**

    The underlying dispute that resulted in the parties participating in arbitration stems from Plaintiff Ronald Russ's allegations against his former employer, Defendant United Services Automobile Association ("USAA"), and his former Supervisor, Gary Sherry. In 2016, Plaintiff filed a complaint in this Court alleging a count of retaliation against USAA and a count of FMLA interference against USAA and Sherry. *Russ v. United Servs. Auto. Ass'n*, No. CV-16-02787-PHX-PGR (D. Ariz. Aug. 18, 2016). On May 11, 2017, this Court granted Defendants' Motions to Dismiss and Compel Arbitration, ordering Plaintiff

---

[1] Defendants originally filed this Response and Cross-Motion as Docket No. 10, but then later re-filed as Docket No. 15 in order to reflect that the Response also contained a motion. The documents appear to be identical. For the sake of this order, the Court will use "Doc. 15" when referencing Defendants' Response and Cross-Motion.

to initiate arbitration of his claims. *Russ v. United Servs. Auto. Ass'n*, No. CV-16-02787-PHX-PGR, 2017 WL 1953458, at *5 (D. Ariz. May 11, 2017). On August 29, 2018, Arbitrator Richard D. Fincher issued a "Final Order on Respondent's Motion to Dismiss," granting the motion and noting that USAA was "entitled to total dismissal with prejudice." (Doc. 1 at 101–113). The Arbitrator found that the action should be dismissed after balancing factors including Plaintiff's failure to comply with discovery obligations. (Doc. 1 at 113). Plaintiff then initiated this action by filing the instant "Motion to Overturn and Vacate A[r]bitrator Dismissal Decision of Aug. 29, 2018 and Reopen Arbitration Case, Order Removal of Arbitrator Richard D. Fincher, Begin Case Anew with no New Filing Required." (Doc. 1). Defendants filed a response, which also included a "Cross-Motion to Confirm Dismissal." (Doc. 15).

**DISCUSSION**

**I.    Legal Standard**

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, where a controversy has been arbitrated pursuant to a valid arbitration provision and the arbitrator has made an award, the parties may seek to confirm, *see* 9 U.S.C. § 9, or to vacate, *see* 9 U.S.C. § 10, that award in the appropriate court. *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008) ("The Act also supplies mechanisms for enforcing arbitration awards: a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it. §§ 9–11."). The Court's "review of the arbitration panel's decision is greatly limited" as "arbitration is an encouraged method of dispute resolution." *U.S. Life Ins. Co. v. Superior Nat. Ins. Co.*, 591 F.3d 1167, 1172 (9th Cir. 2010). This limited review authority preserves due process but does not permit "unnecessary public intrusion into private arbitration procedures." *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 998 (9th Cir. 2003).

Under Section 10, a district court, in the district where an arbitration award was made, may issue an order vacating the award under certain limited circumstances:

(1) where the award was procured by corruption, fraud, or

undue means;
(2) where there was evident partiality or corruption in the arbitrators, or either of them;
(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10; *see also U.S. Life Ins.*, 591 F.3d at 1173 (noting that in *Hall Street Associates*, "the Supreme Court resolved a circuit conflict and ruled that § 10 lists the exclusive grounds for vacating an arbitration award"). "Notice of a motion to vacate . . . an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. "The burden of establishing grounds for vacating an arbitration award is on the party seeking" to vacate the award. *U.S. Life Ins. Co.*, 591 F.3d at 1173.

Under the terms of Section 9, unless an arbitration award has been vacated, modified or corrected pursuant to §§ 10 and 11, if a party files a motion to confirm, "a court 'must' confirm [the] arbitration award[.]" *Hall St. Assocs.*, 552 U.S. at 582 (quoting 9 U.S.C. § 9). Section 9 reads in part as follows:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9.

## II. Jurisdiction

Before the Court considers the arguments of the parties, the Court notes that neither party has stated the basis for this Court's jurisdiction over this action. *See Moore v.*

*Maricopa Cty. Sheriff's Office*, 657 F.3d 890, 894 (9th Cir. 2011) ("The Court is obligated to determine *sua sponte* whether it has subject matter jurisdiction.").

The FAA is considered an anomaly within federal legislation because it "bestows no federal jurisdiction but rather requires for access to a federal forum an independent jurisdictional basis over the parties' dispute." *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009) (alterations, citation, and internal quotation marks omitted); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n. 32 (1983) ("The [FAA] is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 . . . or otherwise."); *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 918 (9th Cir. 2009) ("[T]he FAA does not itself confer jurisdiction on federal district courts over actions to compel arbitration or to confirm or vacate arbitration awards, nor does it create a federal cause of action giving rise to federal question jurisdiction under 28 U.S.C. § 1331.") (citations omitted). "[T]here must be diversity of citizenship or some other independent basis for federal jurisdiction before the order [compelling arbitration] can issue." *Moses H. Cone*, 460 U.S. at 25 n. 32.

In a 2004 decision involving a petition to vacate an arbitration award pursuant to Section 10 of the FAA, the Ninth Circuit considered whether a district court has jurisdiction over a matter when the underlying arbitration involves a matter of federal question. *Luong v. Circuit City Stores, Inc.*, 368 F.3d 1109 (9th Cir. 2004). It held that Section 10 does not "create federal question jurisdiction *even when the underlying arbitration involves a federal question*." *Id.* at 1111 (emphasis added). A few years after the Ninth Circuit's decision in *Luong*, the Supreme Court addressed the same question in *Vaden v. Discover Bank*, 556 U.S. 49 (2009), but addressed it in the context of a Section 4 motion, not Section 10 motion. Section 4 is the provision that allows a party to petition for an order compelling arbitration and reads in part as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of

> another to arbitrate under a written agreement for arbitration may petition any United States district court which, *save for such agreement*, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4 (emphasis added). The Court, relying heavily on the text of Section 4, held that in order to determine whether federal question jurisdiction exists, "[a] federal court may 'look through' a [petition to compel arbitration] to determine whether it is predicated on an action that 'arises under' federal law." *Vaden*, 556 U.S. at 62. But *Vaden* does not indicate that its holding also applies to post-award provisions such as Section 10 motions to vacate or Section 9 motions to confirm. Since *Vaden*, neither the Supreme Court nor the Ninth Circuit has addressed whether the holding in *Vaden* also applies to motions under Sections 9 and 10. Other Circuits have considered the question, and the decisions by those Circuits have created a split on the question. The First and Second Circuits have concluded that the *Vaden* approach to Section 4 also applies to motions under Sections 9 and 10. *See Ortiz-Espinosa v. BBVA*, 852 F.3d 36, 47 (1st Cir. 2017) (concluding that the look-through approach in *Vaden* also applies to Sections 9, 10 and 11); *Doscher v. Sea Port Grp. Secs., LLC*, 832 F.3d 372, 388 (2d Cir. 2016) (holding that "a federal district court faced with a § 10 petition may 'look through' the petition to the underlying dispute, applying to it the ordinary rules of federal-question jurisdiction and the principles laid out by the majority in *Vaden*"). The Third and Seventh Circuits, on the other hand, have held that the court cannot find subject-matter jurisdiction by "looking through" a Section 10 petition to the matters which were arbitrated. *See Goldman v. Citigroup Glob. Mkts., Inc.*, 834 F.3d 242, 255 (3d Cir. 2016) (holding "that a district court may not look through a § 10 motion to vacate to the underlying subject matter of the arbitration in order to establish federal question jurisdiction"); *Magruder v. Fid. Brokerage Servs., LLC*, 818 F.3d 285, 288 (7th Cir. 2016) (distinguishing *Vaden* and noting that "[n]either § 9 nor § 10 has any language comparable to that on which the Supreme Court relied in *Vaden*").

After *Vaden*, district courts within the Ninth Circuit have continued to follow *Luong* and hold that the underlying matters being arbitrated cannot confer federal question jurisdiction to post-award motions under Sections 9 and 10. *See, e.g.*, *Haw. Med. Servs. Assoc. v. Nitta*, No. CV 19-00014 JMS-KJM, 2019 WL 2404513, at *4 (D. Haw. June 7, 2019) (noting that in a motion to confirm an arbitration award, "reliance on the FAA and the mere presence of federal issues in the underlying arbitration" did not confer federal question jurisdiction); *Sanchez v. Borelli*, No. 3:15-CV-00455-LRH-WGC, 2016 WL 4318977, at *3 (D. Nev. Aug. 10, 2016) ("A court may not 'look through' to the arbitration claims in determining subject matter jurisdiction; the fact that the underlying arbitration involved federal claims does not confer federal jurisdiction for the petition to vacate, modify, or correct."); *Jenks v. DLA Piper (US) LLP*, No. 13-CV-5381 YGR, 2014 WL 527237, at *2 (N.D. Cal. Feb. 6, 2014) ("[E]ven if the underlying arbitration involves a matter of federal law, seeking relief related to the arbitration under the FAA is not, in itself, sufficient to confer federal jurisdiction."); *Sharlands Terrace, LLC v.1930 Wright St., LLC*, No. C-11-2503-EDL, 2011 WL 3566816, at *4 (N.D. Cal. Aug. 12, 2011) ("[A] petition to vacate or confirm an arbitration award does not 'arise under' federal law merely because 'the underlying arbitration involves a federal question.'"). The Court will follow the guidance of *Luong*—as well as later decisions of courts within this Circuit, the Third Circuit, and the Seventh Circuit—and hold that federal question jurisdiction does not exist in Sections 9 and 10 petitions merely because the underlying matters being arbitrated may have invoked federal questions. Therefore, even though the underlying matters in the arbitration here involved federal employment statutes, such matters do not confer jurisdiction on this Court.

The Court must therefore look to the motion itself to determine whether jurisdiction exists here. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."). Because there is no indication in

the pleadings that complete diversity exists, the Court looks to the motion to determine whether the request to vacate is based on an independent violation of federal law. Finding federal question jurisdiction in such a motion is rare. *See Crews v. S & S Serv. Ctr. Inc.*, 848 F. Supp. 2d 595, 599 (E.D. Va.) ("The Court recognizes that a petition to vacate an arbitration award would rarely be based on an independent violation of federal law."), *aff'd* 474 F. App'x 370 (4th Cir. 2012); *see also* 94 Am. Jur. Trials *Appealing Adverse Arbitration Awards* § 211 (2004) ("It is the rare arbitration case that raises a federal question sufficient to swing open the federal courthouse doors."). The Ninth Circuit does recognize "a non-statutory escape valve from an arbitral award where the arbitrator has manifestly disregarded the law," *Luong*, 368 F.3d at 1112, and such basis for vacating the award may give the Court jurisdiction. *Sanchez*, 2016 WL 4318977 at *3.

But nothing in Plaintiff's motion indicates any issues with federal law or how the arbitrator handled federal law. Plaintiff's reasons for requesting vacatur seems to be his allegations of an unfair arbitration process and "unfair and premature dismissal" of his case. (Doc. 1 at 4). Specifically, Plaintiff states that there was a "pattern of egregious misconduct in violation of AAA rules and guidelines, ethical violations, violation of legal rights and due process and . . . criminal conduct[.]"[2] (Doc. 1 at 3). Such grounds do not invoke federal question jurisdiction. *See Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1472 (11th Cir. 1997) (holding that there was no federal question jurisdiction when the plaintiffs "moved to vacate, modify, or correct the arbitration award based only on alleged

---

[2] Plaintiff makes similar claims throughout the motion. *See, e.g.*, Doc. 1 at 2 (requesting vacatur due to "unlawful decisions, unfair process of the Arbitration and the denial of legal rights of Claimant, material violations of established rules and protocol of the Arbitration process, violations of the spirit and rule of AAA rules and guidelines, Misconduct by Arbitrator, ethical violations, lying and other acts of dishonesty by Arbitrator in the Arbitration, false written writeups of Pre-Hearing Conference written summaries, denial of due process, misconduct that was repeated, egregious and involved major breaches of all of the Canons and Tenants of conduct established by AAA for conduct by Arbitrators, refusal of Claimant ability to discover evidence that was clearly relevant, material and substantial to his Arbitration case, violations of Federal Rules of Civil Procedure in the case, and many evidenced cases of Arbitrator partiality to Respondent Party USAA and Respondent Counsel Amy J. Gittler of Jackson Lewis Law firm representing USAA[.]"; *Id.* at 2–3 ("misconduct, evident partiality, acts of dishonesty and misconduct, rule violations, unlawful decisions (decisions not based upon a proper consideration and ruling based upon the law").

misdeeds of the arbitrators, not based on any violation of federal law"); *Minor v. Prudential Sec., Inc.*, 94 F.3d 1103, 1105 (7th Cir. 1996), *as amended* (Oct. 1, 1996) ("It is clear that [Plaintiff]'s motion to vacate on the grounds of fraud, corruption, undue means, evident partiality, and failure to consider pertinent and material evidence, does not require the resolution of any federal issue, let alone a 'substantial question of federal law.'"); *see also Crews*, 848 F. Supp at 600 ("As 'review under § 10 focuses on misconduct rather than mistake,' such misconduct will rarely 'arise under' federal law independent from § 10." (citation omitted)).

Accordingly, the Court finds that it lacks jurisdiction over Plaintiff's Motion to Vacate (Doc. 1), as well as over Defendants' Cross-Motion to Confirm (Doc. 15).

**III. Motion to Vacate**

The Court also notes that even if it did have jurisdiction over Plaintiff's motion, Plaintiff failed to timely serve notice on Defendants under the federal statute. Defendants argue that while Plaintiff's filing of his Motion to Vacate was within three-months, Plaintiff did not timely serve notice on Defendants or their attorney. (Doc. 15 at 4). Defendants point to 9 U.S.C. § 12 and argue that Plaintiff's motion is time-barred because the motion "must be served upon the adverse party or his attorney within three months after the award is filed or delivered." (Doc. 15 at 4).

Courts have held that by the plain language of Section 12, it is the "*service* of a motion to vacate . . . that stops the three-month statute of limitations," and not the date that the party files his motion with the district court. *Webster v. A.T. Kearney, Inc.*, 507 F.3d 568, 572 (7th Cir. 2007); *Lawson-Jackson v. Rosenhaus*, No. CV TDC-16-4049, 2017 WL 4063800, at *2 (D. Md. Sept. 13, 2017) ("Under the plain language of [section 12], a petition to vacate must be served, not merely filed, within the specified three-month period."); *Glaser v. Legg*, 928 F. Supp. 2d 236, 239 (D.D.C. 2013) ( "[T]he plain text of [section 12] requires *service* of notice of a motion to vacate rather than mere filing within the three month time limit."). While the Ninth Circuit has not considered this aspect of Section 12, language is always the "starting point" for interpreting a statute. *United States*

*v. Gallegos*, 613 F.3d 1211, 1214 (9th Cir. 2010); s*ee also Webster*, 507 F.3d at 572 ("Unless and until Congress amends § 12 and makes filing the critical date, we will continue to enforce the plain language of the statute."). "If the plain language of a statute renders its meaning reasonably clear, [we] will not investigate further unless its application leads to unreasonable or impracticable results." *Gallegos*, 613 F.3d at 1214 (alteration in original) (citation omitted). The Court agrees with the many courts that have held that under Section 12, notice of a motion to vacate must be "served" and not merely "filed" within the three-month time period. *See Lawson-Jackson*, 2017 WL 4063800 at *3 (dismissing petition to vacate as untimely when petition was filed on the last day of the three-month period, but not served for two and a half more months); *Glaser*, 928 F. Supp. 2d at 239 (dismissing a motion to vacate after petitioner did not serve respondent with notice within three months); *Chase v. Nordstrom*, No. CCB-10-2114, 2010 WL 4789442, at *2 (D. Md. Nov. 17, 2010) (holding that a motion to vacate an arbitration award, filed on the last day of the three-month period and not served until one month later, was time-barred).

Here, Plaintiff filed his motion in this Court on November 27, 2018, but as noted above, Section 12 requires the Court to look to the date of *service* not the date of filing. Defendants assert that they were not served notice until December 12, 2018. Defendants assert that it is "undisputed that the Arbitrator delivered the final award in this case on August 29, 2018." (Doc. 15 at 4). Defendants cite to the first page of Plaintiff's Motion, apparently to the title of the Motion—Motion to Overturn and Vacate A[r]bitrator dismissal decision of Aug. 29, 2018 . . . . (Doc. 1 at 1). Plaintiff also discusses timeliness in his motion and asserts that "the final official decision was communicated on August 27[.]" (Doc 1. at 13). Additionally, both Plaintiff and Defendants attached documents showing that the award is dated August 29, 2018. (Doc. 1 at 113) (Doc. 15-1 at 14).

Assuming that Defendants are correct in concluding that the date of "delivery" under Section 12 is August 29, 2018, notice would have had to be served on Defendants

by November 29, 2018.³ However, courts have found that in the context of Section 12, the date of "delivery" is actually the date of "receipt." *See, e.g., Silicon Power Corp. v. Gen. Elec. Zenith Controls, Inc.*, No. CIV. A. 08-4331, 2009 WL 1971390, at *5 (E.D. Pa. July 7, 2009) ("We conclude . . . that the word 'delivery' is used in Section 12 of the FAA to mean 'receipt.'"). For example, the D.C. Circuit has held that the date of receipt, not the date of mailing, was the date of delivery. *Sargent v. Paine Webber Jackson & Curtis, Inc.*, 882 F.2d 529, 531 (D.C. Cir. 1989). Similarly, the Tenth Circuit has held that the date of receipt, not the date of mailing, is when an award is delivered, and assumed that the three-month period began when the plaintiff received the award five days after it was issued. *Pfannenstiel v. Merrill Lynch, Pierce, Fenner, & Smith*, 477 F.3d 1155 (10th Cir. 2007).

But even if the Court assumes that the date of delivery was five days after the date it was issued, the three months would have run on December 4, 2018,⁴ well before service was made on December 12, 2018. Accordingly, even if this Court did have jurisdiction, Plaintiff's motion to vacate the arbitration award would be denied as untimely.⁵

## CONCLUSION

Accordingly,

**IT IS ORDERED** dismissing Plaintiff's "Motion to Overturn and Vacate A[r]bitrator Dismissal Decision of Aug. 29, 2018 and Reopen Arbitration Case, Order Removal of Arbitrator Richard D. Fincher, Begin Case Anew with no New Filing Required" (Doc. 1) for lack of jurisdiction.

**IT IS FURTHER ORDERED** dismissing Defendants' "Cross-Motion to Confirm

---

³ The Ninth Circuit recently clarified how to calculate the three-month period in *Stevens v. Jiffy Lube Int'l, Inc.*, 911 F.3d 1249, 1252 (9th Cir. 2018). According to *Stevens*, the Court excludes the first day, August 29, 2018, and then calculates three months from August 30, 2018. The first month began on August 30, 2018 and concluded on September 29, 2018; the second month began on September 30, 2018 and concluded on October 29, 2018; and the third month began on October 30, 2018 and concluded on November 29, 2018.

⁴ Again, according to *Stevens*, the Court excludes the first day, September 3, 2018, and then calculates three months from September 4, 2018. The first month began on September 4, 2018 and concluded on October 3, 2018; the second month began on October 4, 2018 and concluded on November 3, 2018; and the third month began on November 3, 2018 and concluded on December 4, 2018.

⁵ The Court need not address arguments on the merits.

1 | Dismissal" (Doc. 15) for lack of jurisdiction.

2 | **IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and terminate this case.

Dated this 12th day of July, 2019.

_____
Honorable Susan M. Brnovich
United States District Judge